_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Brenda J Hughes, | ) | Chapter 13 |
| | ) | Case No. 16-10643 |
|     Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Brenda J Hughes, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 24-02002 |
| | ) | |
| MTGLQ Investors, LP c/o CT | ) | |
| Corporation System; | ) | |
| U.S. Bank Trust National | ) | |
| Association, not in its | ) | |
| individual capacity but solely | ) | |
| as trustee of GSMS 2021-1 Trust; | ) | |
| NewRez LLC d/b/a Shellpoint | ) | |
| Mortgage Servicing; and | ) | |
| NewRez LLC d/b/a Shellpoint | ) | |
| Mortgage Servicing as servicer | ) | |
| for GSMS 2021-1 Trust, | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS IN PART**

    This adversary proceeding came before the Court for hearing on

1

the Motion to Dismiss Plaintiff's Complaint, ECF No. 25,[1] and the Memorandum in Support of Defendants' Motion to Dismiss, ECF No. 26 (collectively, the "Motion to Dismiss"), filed by U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of GSMS 2021-1 Trust ("U.S. Bank"), and NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for GSMS 2021-1 Trust ("Shellpoint") (collectively, "Defendants"). Defendants move to dismiss the adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(1) and (6), made applicable to this proceeding by Rule 7012.[2] ECF Nos. 25 & 26. Appearing at the hearing were counsel for Defendants and counsel for Brenda J. Hughes, the plaintiff in this adversary proceeding and the debtor in the above-captioned chapter 13 case ("Plaintiff"). At the conclusion of the hearing, the Court took the matter under advisement. For the reasons stated herein, the Court will grant the Motion to Dismiss in part.

## JURISDICTION AND AUTHORITY

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. Under 28 U.S.C. § 157, the United States District Court for the Middle District of North Carolina has referred this case and these proceedings to this Court by its Local Rule 83.11.

---

[1] All "ECF" numbers refer to the above-captioned adversary proceeding (Adv. No. 24-02002) unless otherwise specified.

[2] All references to "Rule __" herein refer to the Federal Rules of Bankruptcy Procedure unless otherwise specified.

This is a statutorily core proceeding under 28 U.S.C. § 157(b).[3] The Court has constitutional authority to enter final orders in this proceeding and the parties have expressly consented to the entry of final orders by this Court for all claims raised in the pleadings. ECF Nos. 1 & 15. Venue is proper in this District under 28 U.S.C. § 1409.

### FACTUAL BACKGROUND[4]

On June 10, 2002, Plaintiff signed a promissory note with First Bank in the principal amount of $55,000.00 and interest at the rate of 6.785%. ECF No. 1-1 (the "Note"). That same day, Plaintiff signed a deed of trust which purported to secure the Note and place a lien in favor of First Bank on real property located at 4779 Salem Church Road, Denton, North Carolina (the "Real Property"). ECF No. 1-2 (the "Deed of Trust"). Unlike the Note, which was signed solely

---

[3] "Cases 'arise under' title 11 when the cause of action or substantive right claimed is created by the Bankruptcy Code." In re Se. Materials, Inc., 467 B.R. 337, 346 n.4 (Bankr. M.D.N.C. 2012).

[4] The Court has accepted the factual allegations in Plaintiff's complaint, ECF No. 1 (the "Complaint"), and Plaintiff's Objection to Defendants' Motion to Dismiss, ECF No. 29, and Memorandum Supporting Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint, ECF No. 30 (collectively, the "Response to the Motion to Dismiss"), as true for purposes of determining whether the Complaint states a claim under Fed. R. Civ. P. 12(b)(6), except those facts of which the Court may take judicial notice. See Fed. R. Civ. P. 12(b)(6). "[A] court may take judicial notice of its own records." Watkins v. Wells Fargo Bank, No. CIV.A. 3:10-1004, 2011 WL 777895, at *3 (S.D.W. Va. Feb. 28, 2011); see, e.g., Anderson v. Fed. Deposit Ins. Corp., 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (finding that a district court "should properly take judicial notice of its own records" at the motion to dismiss stage); see also Fed. R. Evid. 201(c). "[B]oth the Supreme Court of the United States and the Fourth Circuit have found that courts may take judicial notice of items or matters in the public record, even at the 12(b)(6) stage of a proceeding." Watkins, 2011 WL 777895, at *3; see Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

by Plaintiff in her individual capacity, ECF No. 1-1, at 3, the Deed of Trust was signed by Plaintiff as "Guardian of Jeffrey Scott Hughes" and Pamela Hughes Miller and her husband, Paul Miller, Jr. ECF No. 1-2, at 14. At the time the Deed of Trust was signed, Pamela Hughes Miller and Jeffery Scott Hughes were the sole owners of the Real Property, and Plaintiff had no ownership interest in the Real Property. See ECF No. 1, ¶ 30; ECF No. 1-3, at 1. Plaintiff has never acquired an interest in the Real Property. ECF No. 1, ¶ 30.

The Deed of Trust was recorded in the Randolph County Register of Deeds on June 14, 2002. ECF No. 1-2, at 15. On February 2, 2016, the Deed of Trust was assigned to MTGLQ Investors, L.P. ("MTGLQ") through the Assignment of Deed of Trust, which was subsequently recorded in the Randolph County Register of Deeds. ECF No. 1, ¶ 11. On May 16, 2016, MTGLQ filed a complaint in Randolph County, North Carolina against Plaintiff, Jeffrey Scott Hughes aka Jeffery Scott Hughes, Paul Miller, Jr., and Pamela Hughes Miller, seeking reformation of the Deed of Trust. MTGLQ Invs., LP v. Hughes, No. 16-CVS-1000 (N.C. Super. Ct. filed May 16, 2016) (the "Reformation Action").[5] On that same date, MTGLQ filed a Notice of

---

[5] The Reformation Action sought: (1) a determination "that the Deed of Trust was drafted and recorded in a manner sufficient to give a reasonable title searcher notice of the interest of [MTGLQ]'s lien on the [Real Property] . . .;" (2) a change of spelling in the general warranty deed through which Jeffrey Scott Hughes and Pamela Hughes Miller acquired the Real Property (the "Vesting Deed"), specifically, changing "Jeffery Scott Hughes" to "Jeffrey Scott Hughes;" (3) a reformation of the Deed of Trust to make it such that it was properly executed by Plaintiff, as a single woman; (4) a reformation of the Deed of Trust to have it include a complete legal description of the Real Property; (5) a court order that the reformation would relate back to the original recording dates of the Vesting

Lis Pendens against the Real Property.  Case No. 16-10643, ECF No. 14-2, at 6.

After MTGLQ filed the complaint, but prior to resolution of the Reformation Action, Plaintiff filed a petition for relief under chapter 13 in this Court on June 24, 2016.  Case No. 16-10643, ECF No. 1.  On Sched. A/B, Plaintiff listed an unencumbered $8,000.00 interest in a mobile home located on the Real Property.  Id. at 10.  The obligation was in default at the time of the bankruptcy filing.  Case No. 16-10643, Claim No. 2-2, at 29.  The Court entered an order confirming Plaintiff's chapter 13 plan on September 21, 2016.  Case No. 16-10643, ECF No. 13.  Also on September 21, 2016, MTGLQ filed a proof of claim asserting a secured claim against the Real Property in the amount of $56,032.46.  Case No. 16-10643, Claim No. 2-1 (the "MTGLQ Claim").  On October 26, 2016, Plaintiff filed an objection to the MTGLQ Claim, asserting that the MTGLQ Claim should be disallowed as a secured claim because Plaintiff was not the owner of the Real Property.  Case No. 16-10643, ECF No. 14.  On December 5, 2016, the Court entered an order granting Plaintiff's objection

---

Deed and the Deed of Trust; (6) for the court order be recorded in the Randolph County Register of Deeds, and indexed according to the parties named in the complaint filed by MTGLQ in the Reformation Action; (7) a court declaration that the Deed of Trust is a valid first lien on the Real Property; and (8) in the alternative, a court declaration that "Brenda Joyce Hughes, Jeffrey Scott Hughes, Pamela Hughes Miller, and Paul Miller, Jr. hold[] the [Real] Property . . . subject to a constructive trust and equitable lien to the benefit of [MTGLQ]." Reformation Action, Compl.  MTGLQ did not seek a money judgment against Plaintiff, or otherwise seek to enforce the debt as her personal obligation.  Id.

to the MTGLQ Claim.[6]  Case No. 16-10643, ECF No. 18.  The Court ordered that the MTGLQ Claim was disallowed as a secured claim without prejudice to MTGLQ seeking relief from stay to proceed with a reformation action, and granted MTGLQ until December 8, 2016, to amend the MTGLQ Claim to document personal liability of Plaintiff on the claim or the claim would be disallowed in full.  Id.  On December 7, 2016, MTGLQ timely filed an amended proof of claim documenting the personal liability of Plaintiff and asserting an unsecured claim.  Case No. 16-10643, Claim No. 2-2.  Plaintiff did not object to the allowance of the amended unsecured claim.

On March 24, 2017, MTGLQ filed a motion for relief from stay seeking authority to foreclose under the Deed of Trust.  Case No. 16-10643, ECF No. 21.  Plaintiff filed an objection to the motion for relief from stay on April 20, 2017, asserting, inter alia, that MTGLQ's interest was adequately protected by the value of the Real Property.  Case No. 16-10643, ECF No. 26, ¶ 9.  MTGLQ withdrew the motion for relief from stay on April 21, 2017, before the Court ruled on the motion.  Case No. 16-10643, ECF No. 27.  Later in the case, MTGLQ filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges in total amount of $993.50.  Case No. 16-10643, Claim No. 2 "doc."  The Court sustained Trustee's objection to the allowance of the Notice of Postpetition Mortgage Fees, Expenses, and

---

[6] The Court found that MTGLQ had failed to provide evidence of a lien against property of the bankruptcy estate.  Case No. 16-10643, ECF No. 18.

Charges, and disallowed it in full.  Case No. 16-10643, ECF No. 31.
On August 20, 2019, this Court entered an order of discharge pursuant
to 11 U.S.C. § 1328(a).  Case No. 16-10643, ECF No. 40.  On October
9, 2019, Plaintiff's bankruptcy case was closed.  Case No. 16-10643,
ECF No. 44.

     On October 12, 2022, three years after the closing of
Plaintiff's bankruptcy case, MTGLQ filed a motion for summary
judgment in the Reformation Action.  Reformation Action, Pl's. Mot.
For Summ. J.  On October 14, 2022, MTGLQ filed a notice of voluntary
dismissal, dismissing its claims against Plaintiff without prejudice
to MTGLQ's claims against the other named defendants.  Reformation
Action, Pl's Notice of Voluntary Dismissal.[7]  On December 5, 2022,
MTGLQ obtained a declaratory judgment in the Reformation Action
granting MTGLQ's motion for summary judgment (the "Reformation
Judgment").  Reformation Action, Declaratory J. and Reformation.
The Reformation Judgment revised errors in the Deed of Trust.[8]  Id.

---

[7] The state court entered an order on June 9, 2017, inactivating the Reformation
Action without prejudice to reopen the action in the future upon proper motion.
Reformation Action, Inactive Order.  On October 31, 2022, MTGLQ filed a motion to
reactivate the Reformation Action.  Reformation Action, Pl's. Mot. to Reactivate.
On November 21, 2022, the state court granted the motion to reactivate.
Reformation Action, Order Reactivating Civil Action.

[8] The Reformation Judgment (1) changed the spelling in the Deed of Trust of
"Jeffrey Scott Hughes" to "Jeffery Scott Hughes" so that the spelling would match
the spelling in the Vesting Deed; (2) revised the Deed of Trust such that it
included a complete legal description of the Real Property; (3) revised the
portion of the Deed of Trust that stated "'Note' means the promissory note signed
by Borrower dated June 10, 2002" to say "'Note' means the promissory note signed
by Borrower Brenda Joyce Hughes and dated June 10th, 2002;" (4) ordered that the
Deed of Trust was "drafted, recorded, and indexed in a manner sufficient to
describe the secured debt and to give a reasonable title searcher notice of the
interest of [MTGLQ]'s lien on the [Real] Property;" and (5) ordered that the

After the entry of the Reformation Judgment, MTGLQ assigned the Deed of Trust to U.S. Bank, and Shellpoint became the servicer of the Deed of Trust on behalf of U.S. Bank.  ECF No. 1, ¶¶ 48-49.  From August through December 2023, Shellpoint mailed monthly mortgage statements to Plaintiff.  ECF No. 1-7, at 1-4, 6 (the "Mortgage Statements").  The Mortgage Statements included a payment due date, amount due, amount of late fee charged for late payment, as well as a "**Delinquency Notice**."  Id.  The Delinquency Notice provided that "[f]ailure to bring your loan current may result in fees and foreclosure – the loss of your home," and stated "[y]ou must pay [the total amount due] to bring your loan current."  Id.  On August 13, 2023, Shellpoint mailed Plaintiff a letter stating that "[Shellpoint] is a debt collector.  We are trying to collect a debt that you owe to [U.S. Bank]," and listing a debt in the total amount of $80,315.18.  ECF No. 1-7, at 5.  Also, from August through December 2023, Shellpoint mailed Plaintiff two to three notices per month requesting that she contact Shellpoint "so we can discuss what options may be available to you."  ECF No. 1-9 (the "Requests for Contact").  On September 19, 2023, Shellpoint mailed a letter to Plaintiff which provided that Plaintiff had until November 8, 2023, to cure her default, and that a failure to timely cure the default may result in a sale of the Real Property.  ECF No. 1-8, at 1 (the

_____

Reformation Judgment shall be recorded and indexed by the Randolph County Register of Deeds.  Reformation Action, Declaratory J. and Reformation.

"Foreclosure Letter").  The Foreclosure Letter further stated that "[u]nder North Carolina State Law, we are required to send you this notice to inform you that you are at risk of losing your home." Id. The Foreclosure Letter also contained a disclaimer that "[t]o the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation." Id. at 8. Like Shellpoint's August 13, 2023 letter, the Foreclosure Letter also provided that "[Shellpoint] is a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose." Id.[9]  Soon after the cure period in the Foreclosure Letter lapsed, U.S. Bank instituted foreclosure proceedings on the Real Property, and served Plaintiff with notice of hearing on the foreclosure action.  ECF No. 1, ¶ 53; ECF No. 1-10.

On March 6, 2024, while the foreclosure proceeding was pending, Plaintiff filed the Complaint commencing this adversary proceeding, seeking a determination that Defendants violated 11 U.S.C. § 524(a)(2) by reactivating and proceeding with the Reformation Action, by instituting a foreclosure proceeding against the Real

_____

[9] The Fair Debt Collection Practices Act requires a debt collector to disclose in the initial written communication with a consumer that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" and to disclose in any subsequent communications that the communications are from a "debt collector." 15 U.S.C.S. § 1692e(11).

Property, and by sending statements, letters, and other communications to Plaintiff; and that the Reformation Judgment is void under 11 U.S.C. § 524(a)(1). ECF No. 1. On September 9, 2024, Defendants filed the Motion to Dismiss, ECF Nos. 25 & 26, and on October 1, 2024, Plaintiff filed the Response to the Motion to Dismiss. ECF Nos. 29 & 30.

For the reasons stated herein and construing the allegations in a light most favorable to Plaintiff, Plaintiff has failed to allege facts giving rise to a plausible claim that: (1) MTGLQ violated 11 U.S.C. § 524(a)(2) by reactivating and proceeding with the Reformation Action; (2) Defendants violated 11 U.S.C. § 524(a)(2) by instituting a foreclosure proceeding against the Real Property; and (3) the Reformation Judgment is void under 11 U.S.C. § 524(a)(1). Construing the pleadings in a light most favorable to Plaintiff, the Complaint states a plausible claim that Defendants violated 11 U.S.C. § 524(a)(2) by sending the letters and other communications to Plaintiff. Therefore, the Court will grant the Motion to Dismiss in part.

### STANDARD OF REVIEW

Motions made under Fed. R. Civ. P. 12(b)(1) may be premised on either facial or factual attacks on jurisdiction. <u>Lutfi v. United States</u>, 527 F. App'x 236, 241 (4th Cir. 2013). "A <u>facial</u> attack is a challenge to the sufficiency of the pleading itself . . . . A <u>factual</u> attack, on the other hand, is . . . a challenge to the

factual existence of subject matter jurisdiction." <u>United States v. Ritchie</u>, 15 F.3d 592, 598 (6th Cir. 1994) (internal citations omitted). When a party properly raises a factual question attacking subject matter jurisdiction, the court can look beyond the pleadings and consider the evidence submitted on the issue to determine whether subject matter jurisdiction exists. <u>Velasco v. Gov't of Indon.</u>, 370 F.3d 392, 398 (4th Cir. 2004); <u>see also</u> <u>Grafon Corp. v. Hausermann</u>, 602 F.2d 781, 783 (7th Cir. 1979); <u>In re Stayner</u>, 185 B.R. 557, 561 (Bankr. N.D. Ill. 1995).

Fed. R. Civ. P. 12(b)(6) requires dismissal of all or part of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The standards set forth in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), guide the Court in determining whether to dismiss a complaint. A complaint should survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

<u>Id.</u> (internal citations omitted).

**DISCUSSION**

The Court considers subject matter jurisdiction before deciding the merits of the case.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).  The Court then will turn to whether issue or claim preclusion apply to Plaintiff's claims.  Finally, the Court will consider the plausibility of Plaintiff's claims that Defendants violated 11 U.S.C. § 524(a)(2) and that the Reformation Judgment is void under 11 U.S.C. § 524(a)(1).

**I.   Plaintiff's claims are not precluded by the Rooker-Feldman Doctrine.**

The presence or absence of subject matter jurisdiction under the Rooker-Feldman doctrine is a threshold issue that a court must determine before considering the merits of the case.  See Friedman's, Inc. v. Dunlap, 290 F.3d 191, 196 (4th Cir. 2002). Defendants contend that the Rooker-Feldman doctrine deprives the Court of subject matter jurisdiction over Plaintiff's claims.  The Court disagrees.

The Rooker-Feldman doctrine defines "original jurisdiction." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005) ("Exxon"); Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 644 n.3 (2002); see also Thana v. Bd. of License Comm'rs for Charles Cty., Md., 827 F.3d 314, 318-19 (4th Cir. 2016); In re Sasson, 424 F.3d 864, 871 (9th Cir. 2005).  Rooker-Feldman illustrates the logical conclusion that original jurisdiction is different from appellate jurisdiction and, therefore, that federal

district courts do not have appellate jurisdiction over state court judicial judgments.  Thana, 827 F.3d at 319 (interpreting Exxon, 544 U.S. at 284, 292 n.8).

Prior to the Supreme Court's decision in Exxon, some federal courts applied the Rooker-Feldman doctrine broadly to preclude jurisdiction where the claims and issues could have been raised in state court.  See In re Barsh, 197 F. App'x 208, 211 (4th Cir. 2006); Davani v. Va. Dep't of Transp., 434 F.3d 712, 718 (4th Cir. 2006).  In Exxon, however, the Supreme Court made clear that Rooker-Feldman is restricted to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon, 544 U.S. at 284.

As clarified by Thana, a federal trial court does not lack subject matter jurisdiction solely because "the same or a related question was earlier aired between the parties in state court."  Thana, 827 F.3d at 320 (quoting Skinner v. Switzer, 562 U.S. 521, 532 (2011)).  As explained by the Fourth Circuit:

> [T]he Rooker-Feldman doctrine does not stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.  If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

Davani, 434 F.3d at 718 (quoting Exxon, 544 U.S. at 293) (internal

alterations omitted); <u>see also</u> <u>Adkins v. Rumsfeld</u>, 464 F.3d 456, 464 (4th Cir. 2006).   The relevant question is whether the federal plaintiff is asking the court to rectify injuries "caused by the state-court decision." <u>Davani</u>, 434 F.3d at 719.  The <u>Rooker-Feldman</u> doctrine does not preclude federal courts from determining claims that conflict with a state court's decision if the decision does not resolve an injury stemming from the state court judgment itself.  <u>See</u> <u>id.</u> at 718-19 (quoting <u>Hoblock v. Albany Cnty. Bd. of Elections</u>, 422 F.3d 77, 86-87 (2d Cir. 2005)).   The Fourth Circuit has explained that "the test is not whether the relief sought in the federal suit 'would certainly upset' the enforcement of a state court decree, [citation removed], but rather whether the relief would 'reverse or modify' the state court decree." <u>Adkins</u>, 464 F.3d at 464 (citing <u>Exxon</u>, 544 U.S. at 284).[10]

Plaintiff asks this Court to find that Defendants violated the discharge injunction of 11 U.S.C. § 524(a)(2), and that the Reformation Judgment is void under 11 U.S.C. § 524(a)(1).  ECF No. 1.  These claims for relief are separate and distinct from the claims in the Reformation Action.  <u>See</u> <u>supra</u> n.5.  Although granting relief on Plaintiff's causes of action "would certainly upset" the Reformation Judgment, Plaintiff asserts two entirely different causes of action that do not amount to an attempt to "reverse or

---

[10] The plaintiffs in <u>Adkins</u> were not seeking to overturn the state court decisions; the plaintiffs brought the federal suit under a separate claim asking the court to find the statute unconstitutional.  464 F.3d at 464.

modify" the Reformation Judgment.  See ECF No. 1; Reformation Action,
Declaratory J. and Reformation.  Plaintiff is not asking this Court
to review any aspect of the Reformation Judgment but is instead
asking the Court to find that Defendants were barred from
reactivating the Reformation Action by 11 U.S.C. § 524(a)(2), and,
therefore, that the Reformation Judgment is void under 11 U.S.C. §
524(a)(1).  ECF No. 1.  Therefore, the Rooker-Feldman doctrine does
not apply to Plaintiff's claims.

## II.  Issue and claim preclusion do not bar Plaintiff's claims.

Similarly, the Reformation Judgment does not have preclusive
effect on the determination of whether Defendants violated 11 U.S.C.
§ 524(a)(2) or whether the Reformation Judgment is void under 11
U.S.C. § 524(a)(1).  "The Full Faith and Credit Act, 28 U.S.C. §
1738, requires federal courts . . . to give state judicial
proceedings 'the same full faith and credit . . . as they have by
law or usage in the courts of such State . . . from which they are
taken.'"  Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 519
(1986) (quoting 28 U.S.C. § 1738).  Federal courts apply the
preclusion principles of the state where the judgment was entered.
Id. at 523; see In re Caswell, 605 B.R. 401, 410 (Bankr. M.D.N.C.
2019) (citing In re McNallen, 62 F.3d 619, 624 (4th Cir. 1995)).

Issue preclusion applies under North Carolina law where "the
determination of an issue in a prior judicial . . . proceeding
precludes the relitigation of that issue in a later action, provided

the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding." Gray v. Fed. Nat'l Mortg. Ass'n, 264 N.C. App. 642, 648-49 (2019) (quoting Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 15 (2004)). The following requirements must be met: (1) the issue is identical to an issue actually litigated and necessary to the judgment in the prior action; (2) the prior action resulted in a final judgment on the merits; and (3) the current parties are the same as, or in privity with, the parties to the earlier action.  See Sartin v. Macik, 535 F.3d 284, 288 (4th Cir. 2008) (citing Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 428-29 (1986)).

Claim preclusion applies when a party attempts to relitigate the same cause of action.  ACC Const., Inc. v. SunTrust Mortg., Inc., 239 N.C. App. 252, 261-62 (2015).  The elements include: (1) a final judgment on the merits in a prior suit; (2) identity of the cause of action in the prior suit and the later suit; and (3) identity of or privity with the parties in both suits.  Id. at 262. Under North Carolina law, claim preclusion bars relitigating claims previously presented or claims that could have been presented.  King v. Grindstaff, 284 N.C. 348, 356 (1973) (quoting Cromwell v. Sac Cnty., 94 U.S. 351, 353 (1877)).

Issue and claim preclusion, respectively, do not apply if the current action is not identical to an issue actually litigated and necessary to the prior judgment, or if the current cause of action

16

lacks identity with the cause of action in the prior suit.  See id. at 355-56.  As discussed above, the causes of action raised in the Complaint, and the issues therein, are not identical to the claims or the issues litigated in the Reformation Action.  Whether Defendants acted in violation of the discharge injunction of 11 U.S.C. § 524(a)(2) was never raised in the Reformation Action. Similarly, whether the Reformation Judgment constituted a determination of the personal liability of Plaintiff on a discharged debt was never raised in the Reformation Action.[11]  Therefore, Plaintiff's claims are not barred by the doctrines of issue or claim preclusion.[12]

III.  **The Court will grant Defendants' Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) in part.**

Having determined that the Rooker-Feldman doctrine is inapplicable to Plaintiff's claims and that Plaintiff's claims are not precluded, the Court will consider whether the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a

---

[11] 11 U.S.C. § 524(a)(1) provides that a bankruptcy court can void a state court judgment when such judgment is a determination of the personal liability of a debtor with respect to a discharged debt, notwithstanding the merit of such state court judgment.  11 U.S.C. § 524(a)(1).

[12] At the hearing, Plaintiff argued, in part, that the Reformation Judgment was improper because the Deed of Trust allegedly references a non-existing debt.  ECF No. 37, at 17:00-20:00.  Plaintiff's original objection to the MTGLQ Claim did not object to its allowance as an unsecured claim, and the claim ultimately was filed and allowed without objection.  See 11 U.S.C. § 502(a).  The Complaint does not assert any factual basis on which the debt is invalid except by operation of the discharge, and the Court understands Plaintiff's contention that the debt is invalid to be based solely on that basis.  See ECF No. 1.  That argument is rejected for the reasons set forth herein.

complaint.  <u>Randall v. United States</u>, 30 F.3d 518, 522 (4th Cir. 1994).  A complaint attacked by Fed. R. Civ. P. 12(b)(6) must provide "enough facts to state a claim to relief that is plausible on its face," and involves pleading more than "labels [or] conclusions" or a "formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555, 570; <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (citing the same).  Factual allegations must be sufficient to raise the right to relief above the speculative level. <u>Twombly</u>, 550 U.S. at 555.  The plaintiff's complaint should include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.  Therefore, the Court must determine whether Plaintiff has plead sufficient and plausible factual allegations that Defendants violated 11 U.S.C. § 524(a)(2) and that the Reformation Judgment is void under 11 U.S.C. § 524(a)(1).

A chapter 13 discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any . . . debt [discharged under § 1328] <u>as a personal liability of the debtor</u>." 11 U.S.C. § 524(a)(2) (emphasis added).  Importantly, the discharge injunction does not invalidate or negate the underlying obligation or prevent a creditor from proceeding <u>in rem</u> against collateral that secures the debt.  <u>In re Arnold</u>, No. 22-70561, 2024 WL 3948458, at *3 (Bankr. W.D. Va. Aug. 26, 2024).

> A discharge affects a debtor's liability in personam. It "operates to permanently stay any attempt to hold the debtor personally liable for discharged debts." [In re Rosenfeld, 23 F.3d 833, 836 (4th Cir. 1994)]. Unless a security interest or lien is avoided, a discharge has little, if any, impact on a creditor's ability to proceed in rem against the property securing the claim. See Johnson v. Home State Bank, 501 U.S. 78, 82–83 (1991) ("[The Bankruptcy] Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy."); Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy.").

In re Thompson, 182 B.R. 140, 154 (Bankr. E.D. Va. 1995) subsequently aff'd, 92 F.3d 1182 (4th Cir. 1996).

Since Plaintiff's debt on the Note originated prepetition and she received a discharge, any attempt to enforce the debt as a personal liability against Plaintiff would violate the discharge injunction. See 11 U.S.C. § 524(a)(2). The question is whether Plaintiff has alleged facts that, accepted as true, show that Defendants attempted to collect the discharged debt as a personal liability of Plaintiff by pursuing the Reformation Action, instituting foreclosure proceedings against the Real Property, or sending statements, letters, and notices to Plaintiff. The Court concludes that Plaintiff has not stated a claim with respect to the Reformation Action or the foreclosure, including sending the required Foreclosure Letter. Nevertheless, the record before the Court is insufficient to determine whether the statements and other communications violated the discharge injunction.

A.    **Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6) that Defendants violated 11 U.S.C. § 524(a)(2) by reactivating and proceeding with the Reformation Action.**

Plaintiff contends that the Reformation Judgment effectively brought Plaintiff's discharged debt back to life and Defendants therefore violated the discharge injunction by reactivating the Reformation Action. ECF No. 30, at 11. This contention misconstrues the effect of discharge. A discharge does not invalidate the underlying debt – the debt remains for all purposes, subject to an injunction against attempting to collect the debt against the debtor as a personal obligation. In re Wiles, No. 02-21206, 2011 WL 160694, at *4 (Bankr. N.D.W. Va. Jan. 19, 2011) ("Importantly, a discharge in bankruptcy does not extinguish debt—the debt is still in existence—only the debtor's personal liability for the payment of that debt is discharged by the Bankruptcy Code.").

In In re Hall, 559 B.R. 456 (Bankr. W.D. Va. 2016), a husband and wife, joint debtors in a chapter 7 case, owned a home as tenants by the entirety, but only the husband signed the promissory note and deed of trust securing the home. Id. at 458. As a result, the creditor's security interest never attached to the home.[13] Id. Once the chapter 7 debtors obtained a personal discharge of their debts, the creditor could neither recover from the debtors on their now-discharged personal liability, nor foreclose on the home due to the

---

[13] Under Virginia law, property held by spouses as tenants by the entirety is exempt from non-joint creditors. Hall, 559 B.R. at 459.

defective deed of trust.  Id. at 458-59.  Thus, after the conclusion of the debtors' chapter 7 case, the creditor initiated a state court action to reform the deed of trust in order to be able to foreclose on the home.  Id. at 458.  The court held that the creditor's attempt to reform the deed of trust did not violate 11 U.S.C. § 524(a)(2), because the creditor's action was in rem rather than in personam against a discharged debt.  Id. at 460-61; see also In re Tucker, 516 B.R. 340, 346 (Bankr. W.D. Va. 2014) (seeking an order in state court determining that creditor holds a valid lien does not constitute an act to establish any debt as a personal liability, and therefore does not violate discharge injunction); In re Sharif, 411 B.R. 276, 280 (Bankr. E.D. Va. 2008) (holding that an action to reform a deed of trust is not barred by discharge injunction because it seeks only to enforce in rem rights); In re Waters, No. 6:09-BK-13537-KSJ, 2013 WL 4479091, at *3 (Bankr. M.D. Fla. Aug. 20, 2013) (same and abstaining as to non-bankruptcy law challenge to validity of lien); Wiles, 2011 WL 160694, at *4 (dismissing claim for violation of discharge injunction under Fed. R. Civ. P. 12(b)(6) despite references in reformation complaint to lien and deed of trust remaining "effective as against the [d]ebtors").

Here, the Reformation Judgment reformed the Deed of Trust to specifically identify the obligation it secured.  See supra n.8.  The Reformation Judgment did not reinstate personal liability of Plaintiff on the Note.  Instead, like the creditor's action in Hall,

the Reformation Judgment merely allowed Defendants to enforce the obligation in rem against the Real Property. Therefore, Defendants did not violate the discharge injunction by reactivating and proceeding with the Reformation Action.[14]

**B.    Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6) that Defendants violated 11 U.S.C. § 524(a)(2) by instituting a foreclosure proceeding against the Real Property.**

The foreclosure action similarly is a permissible enforcement of in rem rights. Plaintiff contends that the debt owed under the Note was discharged through Plaintiff's chapter 13 case and, as a result, Defendants' attempt to foreclose on the Deed of Trust violates 11 U.S.C. § 524(a)(2) because it is an attempt "to force the Plaintiff to pay a discharged debt or have the Real Property foreclosed upon." ECF No. 30, at 14. "[W]hen a creditor holds a

---

[14] At the hearing, Plaintiff contended that because the Court disallowed the MTGLQ Claim as a secured claim without prejudice to Defendants seeking relief from stay to proceed with a reformation action, and Defendants filed a motion for relief from stay seeking authority to foreclose under the Deed of Trust but subsequently withdrew the motion, Defendants were barred from proceeding with a reformation action after the bankruptcy case was closed. ECF No. 37, at 19:20-23:05. These events are insufficient to affect Defendants' in rem rights. No action was taken during Plaintiff's bankruptcy case to challenge or avoid Defendants' lien on the Real Property, and neither the disallowance of the MTGLQ Claim as secured, nor Defendants' withdrawal of the motion for relief from stay, affected MTGLQ's lien. See Case No. 16-10643, ECF Nos. 18 & 27. A proceeding for relief from the automatic stay is a summary proceeding that has no effect on lien rights. See, e.g., Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 32 (1st Cir. 1994) (and cases cited therein); In re Roberts, 367 B.R. 677, 686-87 (Bankr. D. Colo. 2007) ("'a hearing on a motion for relief from stay is merely a summary proceeding of limited effect . . . [and] is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims'") (quoting Grella, 42 F.3d at 33-34). Under the Court's order disallowing the MTGLQ Claim, MTGLQ preserved its right to seek relief from stay to pursue its in rem rights during the pendency of Plaintiff's bankruptcy case, while the automatic stay remained in place. Case No. 16-10643, ECF No. 18. MTGLQ's ultimate decision to wait until the end of Plaintiff's bankruptcy case to pursue those rights had no effect on the underlying rights themselves.

mortgage lien or other interest to secure [a] debt, the creditor's rights in the collateral, such as foreclosure rights, survive or pass through the bankruptcy." In re Reuss, No. BKR. DT-07-05279, 2011 WL 1522333, at *2 (Bankr. W.D. Mich. Apr. 12, 2011). After the automatic stay terminates, the secured creditor, can "take any appropriate action to enforce a valid lien surviving the discharge, as long as the creditor does not pursue in personam relief against the debtor." Id.; see also In re Taylor, No. 09-72532, 2021 WL 3083651, at *3 (Bankr. W.D. Va. July 21, 2021) (finding that discharge injunction did not enjoin lender from exercising its in rem rights against real property through foreclosure process).

In Plaintiff's chapter 13 case, the Court disallowed MTGLQ's secured claim because the Real Property was not property of the estate. Case No. 16-10643, ECF No. 18.[15] Because the Real Property was not property of the estate, the MTGLQ Claim against Plaintiff for her obligation under the Note was allowed as a general unsecured claim. Id.[16] Nevertheless, the MTGLQ Claim remained secured by the non-estate Real Property as security for Plaintiff's obligation under the Note. See ECF No. 1-2. Therefore, although Plaintiff's personal obligation under the Note was discharged, the underlying

---

[15] A claim is a secured claim only "to the extent of the value of such creditor's interest in the estate's interest in such property . . . ." 11 U.S.C. § 506(a)(1) (emphasis added).

[16] Plaintiff never objected to allowance of the amended unsecured claim. See Case No. 16-10643. A filed claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a).

debt and Defendants' lien on the Real Property were otherwise unaffected, and Defendants did not violate the discharge injunction by instituting a foreclosure proceeding to enforce the obligation in rem.

### C. Plaintiff has stated a plausible claim under Fed. R. Civ. P. 12(b)(6) that Defendants violated 11 U.S.C. § 524(a)(2) by sending certain communications to Plaintiff.

To state a claim for a discharge injunction violation, Plaintiff must allege that Defendants (1) had notice of Plaintiff's discharge, (2) intended the actions which violated the discharge, and (3) acted in a way that improperly coerced or harassed Plaintiff. See Bates v. CitiMortgage, Inc., 844 F.3d 300, 304 (1st Cir. 2016). The Complaint alleges sufficient facts to plausibly state that Defendants had actual and constructive knowledge of Plaintiff's discharge and intentionally sent communications to Plaintiff that were sufficiently coercive to constitute a demand for payment as a personal obligation. See ECF No. 1.

An act by a secured creditor that "is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien" does not violate the discharge injunction. 11 U.S.C. § 524(j)(3). To this end, courts generally agree that a secured creditor does not violate the discharge injunction by sending statements to a debtor so long as the statements do not demand payment of the debt as a personal obligation. Lovegrove v. Ocwen Loan Servicing, LLC, No.

7:14CV00329, 2015 WL 5042913, at *6 (W.D. Va. Aug. 26, 2015) (and cases cited therein), aff'd sub nom. Lovegrove v. Ocwen Home Loans Servicing, L.L.C., 666 F. App'x 308 (4th Cir. 2016). "[T]he distinction between communications that improperly seek to impose personal liability on a debtor and those that merely seek periodic payments in lieu of foreclosure is dependent, to a great extent, on the content of the correspondence." In re Cantrell, 605 B.R. 841, 856 (Bankr. W.D. Mich. 2019). In determining whether a creditor's correspondence with a debtor violates the discharge injunction, courts generally consider the following factors:

> (1)[W]hether the communication contains a disclaimer that the communication is not an attempt to collect a discharged debt; (2) whether the communication serves a clear purpose other than to collect a discharged debt like providing a debtor with information, offering opportunities to negotiate, or responding to inquiries of the debtor; (3) whether the communication includes words of collection such as "demand" or "loan" or include a payoff amount, payment due date, references to late charges, or payment coupons; (4) whether communications are frequent and relentless; and (5) whether there is a regulatory or public policy justification for the communication.

In re Flint, 557 B.R. 461, 467 (Bankr. N.D.W. Va. 2016); see, e.g., Arnold, 2024 WL 3948458, at *4 (finding that a secured creditor did not violate discharge injunction where creditor contacted debtor to say that debtor's account was being reviewed for "further action" when payment was late). The Arnold Court noted that "further action" was "close to the flame," as it could be interpreted as an attempt to collect a debt from the debtor as a personal liability, but the

court ultimately decided it was not a discharge injunction violation because "further action" could "legitimately mean repossession [of the collateral] in the event of payment default." Id.[17] Courts use an objective test to determine whether a creditor's actions were improperly coercive or harassing under the circumstances. Kirby, 559 B.R. at 440 (considering the "'immediateness of any threatened action and the context in which a statement is made'") (quoting Rosado, 561 B.R. 598, 605 (B.A.P. 1st Cir. 2017). A debtor's subjective feeling of coercion or harassment is insufficient. Id. A coercive action is one that is threatening or places a debtor "'between a rock and a hard place.'" Id. (quoting Rosado, 561 B.R. at 605). Courts will consider whether "the overall tenor of [the communication] is informational," rather than an attempt to collect the debt as a personal obligation. In re Mele, 486 B.R. 546, 557 (Bankr. N.D. Ga. 2013). In the context of a secured creditor seeking payment in lieu of in rem relief, merely notifying a debtor of the amounts owed and the risk of losing their home if default is not cured, without more, is not tantamount to coercion.[18] See, e.g., In

---

[17] The presence of a bankruptcy disclaimer is a significant factor in determining that a communication does not violate the discharge injunction. See, e.g., Cantrell, 605 B.R. at 856 ("[I]nclusion of 'clear and prominent disclaimers' informing discharged debtors that the creditor is 'solely seeking payment as a substitute for pursuing [its] in rem rights' is an effective way for the creditor to identify the purposes of the communications and to ensure that violation of the discharge injunction does not occur.") (quoting In re Biery, 543 B.R. 267, 285 (Bankr. E.D. Ky. 2015)). Even so, "[c]ommunications that do not contain a bankruptcy disclaimer are not per se violations of the discharge injunction where it is evident from the circumstances that there is no coercion or harassment." In re Kirby, 599 B.R. 427, 444 (B.A.P. 1st Cir. 2019).

[18] The Local Rules of this Court recognize the important public policy of notifying

re Ramirez, 280 B.R. 252, 258 (C.D. Cal. 2002) ("[T]o hold that a secured creditor is precluded from sending monthly billing statements to a debtor would . . . force debtors to guess, with little guidance, the due date and proper amount of their monthly payments. This would unduly complicate the lives of debtors and likely result in a greater number of missed payments and foreclosures by creditors."). Even so, there is no bright line test for determining when communications cross the line and violate the discharge injunction. Kirby, 599 B.R. at 440-41 (and cases cited therein). Thus, the Court must consider the totality of Defendants' communications to Plaintiff.

### 1.    The Foreclosure Letter

The content of the Foreclosure Letter and the context in which it was sent indicate that it does not improperly seek to impose personal liability on Plaintiff. First, the Foreclosure Letter

---

debtors of the status of their loans and the risk that they may lose their residence if a default is not cured. Local Rule 4001-1(e)(3) modifies the discharge injunction such that "if there are direct payments to a creditor, the creditor may send all payment coupons or statements of account and other correspondence to the debtor that the creditor sends to its non-debtor borrowers as described in subsection (d)(1)." Local Rule 4001-1(e)(3). Subsection (d)(1) provides that "[a] secured creditor who is receiving direct payment from a debtor must send to the debtor all payment coupons or statements of account and other correspondence that the creditor provides to its non-debtor borrows if (A) the debtor has indicated, in the Statement of Intention or chapter 13 plan, the intent to retain the secured creditor's collateral by complying with the terms of the contract, or (B) the debtor so requests." Local Rule 4001-1(d)(1). Plaintiff's chapter 13 plan did not provide for direct payments because the MTGLQ Claim was treated as unsecured with respect to the bankruptcy estate. Case No. 16-10643, ECF No. 18. Nevertheless, Debtor indicated her intent to remain on the property, going so far as to object to the motion for relief from stay, asserting that having to move from the Real Property would be an undue hardship, and that MTGLQ was adequately protected by the value of the Real Property. Case No. 16-10643, ECF Nos. 24 & 26. These circumstances are directly analogous to the specific circumstances contemplated by Local Rule 4001-1(e)(3).

contains a disclaimer which provides that it is not "an attempt to collect a debt as [Plaintiff's] personal obligation." ECF No. 1-8, at 8. Second, the Foreclosure Letter serves a clear purpose other than to collect a discharged debt - to notify Plaintiff that she is at risk of losing her home and inform her of the steps necessary to avoid foreclosure.[19] Third, although the Foreclosure Letter provides the total amount necessary to cure default and the payment due date, id. at 1, this information is not only required under North Carolina law but is also necessary to fully apprise the borrower of how foreclosure may be avoided. See N.C. Gen. Stat. § 45-102. Fourth, Plaintiff received only one Foreclosure Letter from Defendants. See ECF No. 1. Finally, it cannot be a violation of the discharge injunction for creditors who are permitted to exercise their in rem rights to send the very notices required by state law to enforce those rights. See In re Golden, 568 B.R. 838, 842 (Bankr. M.D. Ala. 2017) ("[T]o lawfully foreclose a mortgage, a mortgagee must send certain notices to the mortgagor. If the act of providing these notices is unlawful, the mortgagee's right to foreclose is destroyed and, by extension, the mortgage itself is destroyed as well.").

---

[19] Under North Carolina law, foreclosure notices are required for a creditor to enforce in rem rights against real property. See N.C. Gen. Stat. § 45-102 ("At least 45 days prior to the filing of a notice of hearing in a foreclosure proceeding on a primary residence, mortgage servicers of home loans shall send written notice by mail to the last known address of the borrower to inform the borrower of the availability of resources to avoid foreclosure." This written notice must include, for example, "[a]n itemization of all past due amounts causing the loan to be in default" and "[a]n itemization of any other charges that must be paid in order to bring the loan current.").

Therefore, Defendants did not violate the discharge injunction by sending the Foreclosure Letter.

> **2.    The record is insufficient for the Court to consider the overall tenor of all the communications at this stage in the proceedings.**

The Foreclosure Letter is the only communication provided in its entirety in the Complaint. See ECF No. 1-8. The Mortgage Statements and the Requests for Contact refer to reverse sides and additional pages that contain additional information. Although the Court may consider the entirety of any document attached to a complaint in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), neither party provided the Court with the reverse side or any additional pages of these documents. ECF Nos. 1-7, at 1-4, 6 & 1-9. Similarly, Shellpoint's August 13, 2023 letter, as filed by Plaintiff, is cut off at the bottom and has not been provided in its entirety. ECF No. 1-7, at 5. Despite these omissions, the portions provided are sufficient to grant the motion to dismiss with respect to some of the communications.

> **a.    The overall tenor of the Requests for Contact are informational, rather than coercive.**

The portions of the Requests for Contact that are attached to the Complaint are not attempts to collect a debt. See ECF No. 1-9. They merely request that Plaintiff contact Shellpoint for the purpose of determining why default has occurred and discussing available options. Id. Although each statement contains a total balance owed, there is no request or demand for payment of any kind.

Id. The entirety of the communication is to request contact to see whether alternatives to foreclosure exist. Moreover, Shellpoint sent the first Request for Contact in September, sent the Foreclosure Letter immediately thereafter, and Defendants promptly moved forward with the foreclosure after the cure period in the Foreclosure Letter. Cf. In re Paul, 534 F.3d 1303, 1308 (10th Cir. 2008) (in order for a threat to enforce in rem rights to constitute a violation of discharge injunction, a debtor must "prove not merely that [the creditor's] act is not what it appears to be, but that the act in question is one to collect a discharged debt in personam"). Plaintiff has not alleged facts to plausibly state a claim that the Requests for Contact had a purpose other than as stated, and Defendants' contemporaneous pursuit of the collateral is directly contrary to such an inference. As such, the Requests for Contact are more accurately described as offers to negotiate than as demands for payment and did not violate the discharge injunction.

> **b.  The portion of Shellpoint's August 13, 2023 Letter provided in the record plausibly constitutes a demand for payment as a personal liability.**

In contrast, the portion of Shellpoint's August 13, 2023 letter attached to the Complaint may plausibly be construed as an attempt to collect a discharged debt. See ECF No. 1-7, at 5. This letter states that Shellpoint is a debt collector trying to collect a debt Plaintiff owes to U.S. Bank, and the portion provided does not include any disclaimer, provide a statement that the creditor will

seek to enforce its lien rights if the default is not cured, or contain any other indication that Plaintiff's payment of this debt is voluntary or that the letter is informational. Id. The Court is unable to divine from the letter as provided any clear purpose. Therefore, the Court will deny the Motion to Dismiss Count One of the Complaint with respect to the August 13, 2023 Letter.

> ### c. The Court is unable to determine the overall tenor of the Mortgage Statements from the incomplete copies provided.

A number of courts have recognized that sending regular monthly mortgage statements with bankruptcy disclaimers does not constitute a violation of the discharge injunction. See, e.g., In re Ohai, 660 B.R. 737, 746 (Bankr. N.D. Ga. 2024) (observing that courts must consider the entirety and "collective effect" of documents); cf. Local Rule 4001-1(e) and n.18, supra. The portions of the Mortgage Statements that are attached to the Complaint contain the amount due and payment due date without any bankruptcy disclaimer or other statements from which the Court may assess the overall tenor as informational. ECF No. 1-7, at 1-4, 6. As such, and construing the facts in a light most favorable to Plaintiff, the Court cannot determine that the totality of Defendants' communications to Plaintiff fell short of coercion or harassment in the context of the Motion to Dismiss. Therefore, the Court finds that the Complaint states a claim under Fed. R. Civ. P. 12(b)(6) that Defendants violated 11 U.S.C. § 524(a)(2) by sending the Mortgage Statements

to Plaintiff.

**D.   Plaintiff has failed to state a claim that that the Reformation Judgment is void under 11 U.S.C. § 524(a)(1).**

An order of discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under [§ 1328]." 11 U.S.C. § 524(a)(1). Because the Reformation Judgment did not establish personal liability of Plaintiff, it is not void under 11 U.S.C. § 524(a)(1). As previously stated, after a debtor receives a discharge, the debt remains, but a secured creditor is limited to enforcing the obligation in rem. Wiles, 2011 WL 160694, at *4. Permitted in rem actions may include seeking reformation of a deed of trust in state court. See, e.g., In re Davis, 99 B.R. 732 (Bankr. W.D. La. 1989). In Davis, joint chapter 7 debtors granted a mortgage to a creditor that failed to contain a complete legal description of the real property securing the mortgage. Id. at 733. The debtors received discharges, and the creditor initiated a state court action seeking to reform the mortgage to include a proper legal description. Id. The debtors sought to enjoin the creditor's state court action under 11 U.S.C. § 524(a)(1). Id. The court held that the state court action did not violate the discharge injunction because it could only result in relief in rem and would not affect the personal liability of the debtors. Id. at 734.

Here, Plaintiff contends that the Reformation Action attempted to change the nature of her debt from unsecured to secured and

thereby make her personally liable for a discharged debt.  ECF No. 30, at 16.  However, as previously stated, Defendants' claim against Plaintiff for her obligation under the Note was treated as unsecured in Plaintiff's chapter 13 case solely because the Real Property was not property of Plaintiff's bankruptcy estate — not because it was unsecured as to any property that may exist.  Case No. 16-10643, ECF No. 18.  As held by the state court, the Reformation Judgment merely effectuated the intent of the parties to the Deed of Trust to allow Plaintiff's liability under the Note to be secured by the Real Property and to allow Defendants to enforce their in rem rights in the Real Property.  The Reformation Judgment, like the state court action in Davis, could only result in relief in rem and could not affect the personal liability of Plaintiff.  In fact, the Reformation Judgment did not create personal liability for Plaintiff and thus did not violate the terms of the discharge injunction.  Therefore, Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6) that the Reformation Judgment is void under 11 U.S.C. § 524(a)(1).

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1.  Defendants' Motion to Dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is denied;

2.  Defendants' Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is granted with respect to the claims that: (a) Defendants violated 11 U.S.C. § 524(a)(2) by reactivating

and proceeding with the Reformation Action; (b) Defendants violated 11 U.S.C. § 524(a)(2) by instituting a foreclosure proceeding against the Real Property; (c) Defendants violated 11 U.S.C. § 524(a)(2) by sending the Requests for Contact reflected in ECF No. 1-9; and (d) the Reformation Judgment is void under 11 U.S.C. § 524(a)(1);

3.   Defendants' Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is denied with respect to the claim that Defendants violated 11 U.S.C. § 524(a)(2) by sending the August 13, 2023 Letter and the Mortgage Statements to Plaintiff.

[END OF DOCUMENT]

<u>Parties to be Served</u>
24-02002

All parties to this adversary proceeding.